CHIN, J.
CORRIGAN, J.
LIU, J.
CUÉLLAR, J.
KRUGER, J.
ZELON, J.*
KRUGER, J.
I concur in the majority opinion, which I have signed. I write separately to expand briefly on a key element of the analysis: why the opportunity to purchase additional retirement service (ARS) credits was not an employment benefit that vested by implication, as were the pension benefits at issue in **455 Betts v. Board of Administration (1978) 21 Cal.3d 859, 148 Cal.Rptr. 158, 582 P.2d 614, Kern v. City of Long Beach (1947) 29 Cal.2d 848, 179 P.2d 799, and similar cases.
Our cases concerning the vesting of public employee pension rights are most easily understood through the lens of ordinary contract law principles. Under those principles, an implied-in-fact unilateral contract can arise from the government's offer of an employment benefit in exchange for the public employee's acceptance by entering into or continuing in public service. When the benefit is one that will be provided only in the future-like a pension-the formation of such a contract vests the right to that benefit, making the government's offer irrevocable as to employees who have worked for the deferred benefit and earned it as part of the employment bargain. (Maj. opn., ante , 244 Cal.Rptr.3d at p. 166, fn. 12, 435 P.3d at p. 448, fn. 12; Betts v. Board of Administration , supra , 21 Cal.3d at p. 863, 148 Cal.Rptr. 158, 582 P.2d 614 ; Kern v. City of Long Beach , supra , 29 Cal.2d at pp. 851-852, 855, 179 P.2d 799 ; see McGrath v. Rhode Island Retirement Bd., etc. (1st Cir. 1996) 88 F.3d 12, 16-17 ; Moro v. State (2015) 357 Or. 167, 351 P.3d 1, 20-22.)[1]
*175 *996 Of course, not every statute or ordinance providing an employment benefit (or even every aspect of a statutory pension program) constitutes an implied offer for a unilateral contract, and thus not every future benefit is the subject of a vested right; if that were so, the implied-right exception would swallow the general rule that the terms and conditions of public employment are set by statute rather than contract. (Maj. opn., ante , 244 Cal.Rptr.3d at pp. 160, 169-170, 435 P.3d at pp. 442, 450-451.) Our cases have treated deferred compensation programs, such as pension plans, as special in this regard. An understanding of why these programs create implied vested rights is important to our understanding of why the particular program at issue here does not.
Deferred compensation programs provide a particularly clear case for formation of an implied unilateral contract. Monetary compensation, whether received periodically for work performed during the period or deferred until retirement in the form of a pension benefit, is the central consideration for which public employees, like other workers, enter and continue in employment. An implied contractual promise protecting this type of pension right arises because neither party could reasonably understand a deferred compensation offer to be revocable at will after employment. (See Brant v. California Dairies, Inc. (1935) 4 Cal.2d 128, 133, 48 P.2d 13 [intent of contractual parties determined objectively from their words and conduct]; Meyer v. Benko (1976) 55 Cal.App.3d 937, 942-943, 127 Cal.Rptr. 846 [mutual assent to contract determined by "what the outward manifestations of consent would lead a reasonable person to believe"]; 1 Witkin, Summary of Cal. Law (11th ed. 2017) Contracts, § 767, p. 821.) No reasonable employee would agree to defer significant portions of his or her compensation without a vesting guarantee, and no reasonable employer would imagine that employees had agreed to work on such terms.
None of this is true of the opportunity to purchase ARS credits provided by Government Code section 20909. For reasons the majority opinion discusses, the parties could not reasonably have understood that opportunity as an offer that could be accepted simply by employment in a participating California Public Employees' Retirement System agency. (Maj. opn., ante , 244 Cal.Rptr.3d at pp. 168-169, 435 P.3d at p. 450.) Among other things, no new service was required of public employees who had already served five years when section 20909 was enacted (a period corresponding to the general pension vesting period and to the requirements of **456 federal tax law) and purchasers had to pay the full estimated value of the additional credits under Government Code sections 20909 and 21052. Objectively speaking, a party looking at this arrangement *997 would understand that the ARS purchase option was not offered in exchange for any period of public service but rather in exchange for the statutorily mandated purchase price. (See Foley v. Interactive Data Corp. (1988) 47 Cal.3d 654, 677-678, 254 Cal.Rptr. 211, 765 P.2d 373 [parties' intent to agree on implied contractual terms is determined from their conduct]; Rest.2d Contracts, §§ 19, 30, com. d, p. 86, 71, com. b, p. 173 [terms of offer and acceptance governed by objective *176 manifestations of assent].) The offer was one that could be accepted only by the employee's election and actual purchase of ARS credits, not simply by staying on the job.
For these reasons, I agree with the majority: No implied unilateral contract arose simply from an employee's entering or continuing in public service during the period the ARS program was in force. As a consequence, the contract clause of the California Constitution did not protect the right to purchase ARS credits from later alteration or revocation.
I Concur:
LIU, J.

Associate Justice of the Court of Appeal, Second Appellate District, Division Seven, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

We often ask whether a statute creates implied vested rights, but when the terms of a pension plan are set by statute for all public employers participating in the plan, it is the employer's offer of employment subject to the plan, rather than the statute itself, that constitutes the contractual offer. (See Moro v. State , supra , 351 P.3d at p. 21 ["Although the [Public Employee Retirement System] contract results from an offer and acceptance, the PERS statutes are themselves not an offer that employees can accept. Instead, each participating employer offers a promise to its employees to provide compensation, including PERS benefits, in exchange for the employees' services."].)