Filed 4/23/19; Certified for Publication 5/20/19 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| DR. ROBERT B. PAXTON, | C086204 |
| Plaintiff and Appellant, | (Super. Ct. No. 34201580002212CUWMGDS) |
| v. | |
| BOARD OF ADMINISTRATION, CALIFORNIA PUBLIC EMPLOYEES' RETIREMENT SYSTEM, | |
| Defendant and Respondent. | |

Plaintiff Dr. Robert Paxton reviews claims for disability benefits for the Department of Social Services, where he is still employed. This dispute arose after the California Public Employees' Retirement System (CalPERS) determined that compensation Paxton received as part of a bonus program will not be considered when calculating his future pension benefit. This appeal is taken from a judgment denying his petition for writ of administrative mandamus challenging a decision by the Board of Administration of CalPERS upholding this interpretation. The trial court's conclusion

1

that the bonuses Paxton earned were for performing additional services outside his regular duties, and thus not appropriate for consideration when calculating his pension benefit, is supported by substantial evidence. For this reason, we will affirm the judgment.

## I. BACKGROUND

The Department of Social Services is the state agency responsible for determining, through its Disability Determination Service Division, the medical eligibility of disabled Californians who are seeking federal Social Security benefits or state Medi-Cal benefits. Paxton is a medical consultant-psychiatrist who reviews claims for the federal program. Only medical consultant-psychiatrists (hereafter "consultants") review claims involving psychiatric issues. These consultants are expected to be at work for "core hours," which are 9:00 a.m. to 11:30 a.m. and 1:30 p.m. to 2:30 p.m., and to average 40 hours per week, but otherwise they have flexibility in deciding when they work.

The Department of Social Services has suffered from periodic backlogs of disability review cases in the federal program. In 1993, the Department of Social Services received an exemption from the Department of Personnel Administration[1] to temporarily pay overtime to consultants to deal with the pending cases even though they are salaried employees and such payments are inconsistent with the Fair Labor Standards Act of 1938 (29 U.S.C. § 201 et seq.). The Department of Personnel Administration granted the temporary exemption with the expectation that the Department of Social Services would adopt an alternative to paying overtime.

In 1996, after a second request for an exemption was denied, the Department of Social Services proposed requiring consultants to work extra hours without compensation

---

[1] Now the Department of Human Resources. (Government Code, § 19815—further undesignated statutory references are to the Government Code; see Stats. 2013, ch. 76, § 93.)

due to the extra workload and their classification as professional employees exempt from overtime and for whom "[t]he regular rate of pay is full compensation for all time that is required for the employee to perform the duties of the position." The union representing the consultants rejected this proposal "out of hand." The Department of Social Services and the union thereafter agreed to a voluntary bonus program "for processing additional workload." Under the bonus program, consultants would be paid for each case closed above a certain threshold per week. A branch could invoke the program when certain triggers were met, such as when a backlog persisted. The funding was provided by the federal government until the bonus program stopped in November 2011 after news reports exposed the amount of the bonus payments.

Paxton participated in the bonus program from 2005 until it ended. During that period, consultants were paid $27 per case after 90 cases per week. The trial court found that "[t]he 90-case threshold was not hard to exceed in part because the threshold never was adjusted to account for increased efficiencies occasioned by computerization of the records and use of more experienced analysts." Paxton and two retired consultants testified that they did not work more than 40 hours per week. Paxton was able to earn significant bonuses by spending an average of only five minutes to review a case.[2] At this rate, he surpassed the weekly threshold for achieving a bonus in about a day and a half. As a result, he earned over $1.2 million in bonuses. In 2010, a particularly lucrative year, his monthly bonuses ranged from $16,821 to $39,501, more than three times his monthly salary. Paxton still works for the Department of Social Services.

---

[2] The record suggests Paxton was not working at his usual pace. He testified that earning a bonus was stressful and "very arduous, almost painful at times because of the amount of mental effort to do the kind of work I did. I would have to take some time off during the week, and if the building happened to be open on a Saturday, I might come in for a couple hours." He added, "you had to mentally focus on every case to the best of your ability, as quick as you could, and give a coherent, correct decision for every case you had."

"CalPERS is a unit of the Government Operations Agency responsible for administering the retirement systems for the State of California." (*Marzec v. Public Employees' Retirement System* (2015) 236 Cal.App.4th 889, 896.) Under the Public Employees' Retirement Law, "the amount of a pension is most directly a function of two variables: (1) an age-adjusted fraction of the employee's 'final compensation' and (2) the employee's service credit." (*Molina v. Board of Administration, etc.* (2011) 200 Cal.App.4th 53, 65 (*Molina*).) "Final compensation" is a function of the employee's highest "compensation earnable," which in turn consists of the employee's "payrate"[3] and "special compensation." (*Ibid.*; see Government Code, § 20636, subd. (a).) Because "payrate" and "special compensation" are statutorily defined, an employee's pension "will not necessarily reflect his total personal compensation." (*Molina, supra,* at p. 65.)

"State employees and other members of CalPERS were granted the opportunity to purchase [additional retirement service] credit in 2003 by the enactment of section 20909."[4] (*Cal Fire Local 2881 v. California Public Employees' Retirement System* (2019) 6 Cal.5th 965, 973 (*Cal Fire*).) In 2012, the Legislature eliminated the opportunity to apply to purchase these credits effective January 1, 2013. (*Id.* at p. 975;

---

[3] " '[P]ayrate' . . . means the average monthly remuneration paid in cash out of funds paid by the employer to similarly situated members of the same group or class of employment, in payment for the member's services or for time during which the member is excused from work because of holidays, sick leave, vacation, compensating time off, or leave of absence." (§ 20636, subd. (g)(2).)

[4] "The concept of purchasing service credit did not originate with [additional retirement service] credit. Members who had performed military service or other 'public service,' as defined by statute, had long been able to obtain pension service credit for that time by making appropriate payments to CalPERS. [Citations.] Section 20909, however, was the first opportunity for state employees to acquire 'nonqualified' service credit, or service credit that did not reflect any type of service. [Citations.] Because [additional retirement service] credit is untethered to actual service, it acquired the nickname ' "air time." ' " (*Cal Fire, supra,* 6 Cal.5th at p. 973.)

4

see § 7522.46.) In November 2012, Paxton submitted a request to CalPERS for the cost to purchase five years of additional retirement service credit under these provisions.

"To acquire [additional retirement service] credit, the member was required to pay CalPERS, either in a lump sum or installments, 'an amount equal to the increase in employer liability, using the payrate and other factors affecting liability on the date of the request for costing of the service credit,' a figure calculated by CalPERS. [Citations.] In other words, the employee was required to pay the present value of the increase in his or her pension benefits that would result from the purchased [additional retirement service] credit, at least to the extent that increase could be estimated from circumstances prevailing at the time the employee exercised the opportunity to purchase [additional retirement service] credit." (*Cal Fire, supra,* 6 Cal.5th at pp. 973-974.)

CalPERS calculated Paxton's cost to purchase additional retirement service credit based on a highest payrate of $12,894 and no additional special compensation. While the exclusion of Paxton's bonuses resulted in a lower cost to purchase additional service credit, calculating his pension this way would ultimately reduce the benefit Paxton would be eligible for upon retirement. Paxton's counsel responded by indicating he intended to file a declaratory relief action against CalPERS seeking confirmation that the bonuses Paxton received are pensionable. CalPERS responded in part with a letter explaining that these amounts are not pensionable. Paxton appealed the decision, and his appeal was consolidated with the appeals of two other consultants who had retired from the Department of Social Services and were seeking to include the bonus payments as special compensation for purposes of calculating their final retirement allowance.

After a hearing, an administrative law judge issued a proposed decision determining that the bonus payments did not meet the requirements under section 20636 to qualify as special compensation. The Board adopted this proposed decision with minor changes.

5

Paxton challenged the Board's decision by a petition for writ of administrative mandamus under Code of Civil Procedure section 1094.5. He also alleged two causes of action for declaratory relief.

The trial court denied the petition and the complaint. As relevant to this appeal, the court concluded that the Board properly determined the bonus payments paid to Paxton were not pensionable compensation because they were intended to compensate him for performing additional work outside of his regular duties.

The trial court entered judgment in favor of the Board, and Paxton filed a timely appeal.

## II. DISCUSSION

### A. *Standard of Review*

"Code of Civil Procedure section 1094.5 is the administrative mandamus provision providing the procedure for judicial review of adjudicatory decisions rendered by administrative agencies." (*Molina, supra,* 200 Cal.App.4th at p. 60.) In reviewing decisions which affect a vested, fundamental right, such as the retirement benefits involved in this action, "the trial court exercises independent judgment on the evidence." (*Ibid*.) Under this standard, "a trial court must afford a strong presumption of correctness concerning the administrative findings, and the party challenging the administrative decision bears the burden of convincing the court that the administrative findings are contrary to the weight of the evidence." (*Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 817.) "[T]he standard of review on appeal of the trial court's determination is the substantial evidence test." (*Id*. at p. 824.) "We must uphold the trial court's findings unless they are ' " 'so lacking in evidentiary support as to render them unreasonable.' " ' [Citations.] We may not reweigh the evidence, but instead are bound to consider the facts in the light most favorable to CalPERS's board, giving it every reasonable inference and resolving all conflicts in its favor." (*Molina, supra,* at p. 61.)

6

"A different standard, however, applies to questions of law.  We review trial court decisions as to those questions de novo."  (*Molina, supra,* 200 Cal.App.4th at p. 61.)  The Board's interpretation of the Public Employees' Retirement Law "is to be accorded great weight unless clearly erroneous."  (*City of Sacramento v. Public Employees Retirement System* (1991) 229 Cal.App.3d 1470, 1478.)  Furthermore, our Supreme Court has held that "[a]ny ambiguity or uncertainty in the meaning of pension legislation must be resolved in favor of the pensioner, but such construction must be consistent with the clear language and purpose of the statute."  (*Ventura County Deputy Sheriffs' Assn v. Board of Retirement* (1997) 16 Cal.4th 483, 490, superseded by statute on another ground as stated in *Marin Assn. of Public Employees v. Marin County Employees' Retirement Assn.* (2016) 2 Cal.App.5th 674, 691, fn. 14.)

B.      *Special Compensation*

The issue presented in this appeal is whether the trial court erred in concluding the bonuses were not special compensation that must be included when calculating a plaintiff's pension benefit.  Subdivision (g)(3)(B) of section 20636 defines special compensation to include "[c]ompensation for performing normally required duties, such as holiday pay, bonuses (for duties performed on regular work shift), educational incentive pay, maintenance and noncash payments, out-of-class pay, marksmanship pay, hazard pay, motorcycle pay, paramedic pay, emergency medical technician pay, Peace Officer Standards and Training (POST) certificate pay, and split shift differential."  We reject Paxton's contention that the defining principle, "normally required duties," "can only apply to the first entry in the list, i.e., holiday pay."  The plain language of the statute is clear.  Subdivision (g)(3)(B) of section 20636 defines special compensation to include "[c]ompensation for performing normally required duties," and then lists examples.

Subdivision (g)(4)(I) of section 20636, on the other hand, excludes from payrate and special compensation "[c]ompensation for additional services outside regular duties,"

7

and then gives a similar list of examples "such as standby pay, callback pay, court duty, allowance for automobiles, and bonuses for duties performed after the member's regular work shift."

Significantly, bonuses are included in both lists of examples; they are included under section 20636, subdivision (g)(3)(B) if they are "for duties performed on regular work shift," and excluded under subdivision (g)(4)(I) if they are "for duties performed after the member's regular work shift."[5]  Paxton's assertion that the bonuses are special compensation is based on these examples.  He contends his bonuses are pensionable because they were earned for performing regular duties and he did not work overtime to earn them.  His briefing is focused almost exclusively on the latter point—that the bonuses were earned during a regular work shift, but the former point—whether they were earned for performing one of Paxton's duties—is actually the critical question before us.  A duty is something an employee is required to do.  (See Merriam-Webster Collegiate Dict. (11th ed. 2006) p. 388, col. 2 ["obligatory tasks, conduct, service, or functions that arise from one's position (as in life or in a group)"]; Black's Law Dict. (10th ed. 2014) p. 615, col. 1 ["A legal obligation that is owed or due to another and that needs to be satisfied; that which one is bound to do, and for which somebody else has a corresponding right"].)  Indeed, the examples cannot be read without reference to their defining principles, and as these defining principles explain, special compensation is "[c]ompensation for performing normally *required duties*" and excludes "[c]ompensation for *additional services* outside regular duty."  (§ 20636, subd. (g)(3)(B) & (4)(I), italics added.)  A bonus earned for purely voluntary services performed outside of an employee's duties is not special compensation, regardless of the time frame in which it was earned.  Whether Paxton's bonuses qualified as special compensation thus turns not

---

[5]  Similarly, payments for overtime are excluded from payrate and special compensation. (§ 20636, subd. (g)(4)(H).)

on an examination of the parameters of his work shift but of his duties and these defining principles.

Paxton contends his bonuses were for performing normally required duties because he was reviewing disability files. The trial court found that it was a close question, but the weight of the evidence supported the Board's conclusion that the bonuses were not for performing "normally required duties." The court's conclusion was based on its review of the record, including the unusual history of the bonus program. The program was a replacement for an overtime program that was necessitated because the consultants refused to work more hours to address the backlog of claims, despite their salaried position and even though, under their classification, "[t]he regular rate of pay is full compensation for all time that is required for the employee to perform the *duties* of the position." (Italics added.) As the trial court explained, "[i]n essence, [the union] took the position that the 'extra work' was not part of the employees' 'regular *duties*' and therefore warranted 'extra compensation' for the 'additional workload.' " (Italics added.) This bonus program was the result. In other words, the foundation of this bonus program was the understanding that it would compensate consultants for additional work that was not part of their duties. The trial court therefore concluded the extra pay was not pensionable compensation because "the court agrees with the Board that the 'bonus payments' paid to Paxton were intended to compensate him for performing 'additional' work 'outside his regular duties,' even if, for a variety of reasons, he was able to complete this extra work within his 'normal' 40-hour work week." The trial court's conclusion is supported by substantial evidence and the plain language of the statute. Accordingly, we shall affirm the judgment.

9

### III. DISPOSITION

The judgment is affirmed.  Respondent shall recover its costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)

/S/

RENNER, J.

We concur:

/S/

ROBIE, Acting P. J.

/S/

BUTZ, J.

Filed 5/20/19

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| DR. ROBERT B. PAXTON, | C086204 |
| Plaintiff and Appellant, | (Super. Ct. No. 34201580002212CUWMGDS) |
| v. | |
| BOARD OF ADMINISTRATION, CALIFORNIA PUBLIC EMPLOYEES' RETIREMENT SYSTEM, | ORDER CERTIFYING OPINION FOR PUBLICATION |
| Defendant and Respondent. | [NO CHANGE IN JUDGMENT] |

THE COURT:

The opinion in the above-titled matter filed on April 23, 2019, was not certified for publication in the official reports. For good cause it now appears that the opinion should be published in the official reports and it is so ordered. There is no change in the judgment.

EDITORIAL LISTING

APPEAL from a judgment of the Superior Court of Sacramento County, Timothy M. Frawley, Judge. Affirmed.

1

Hecht Solberg Robinson Goldberg & Bagley, and Richard A. Schulman, for Plaintiff and Appellant.

Steptoe & Johnson, Jason Levin, and Jennifer Morrow for Defendant and Respondent.


BY THE COURT:

/S/
_____

ROBIE, Acting P. J.


/S/
_____

RENNER, J.