Filed 3/18/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| GEORGE M. RUSH,<br><br>　　　Plaintiff and Appellant,<br><br>v.<br><br>STATE TEACHERS' RETIREMENT SYSTEM,<br><br>　　　Defendant and Respondent. | A160558<br><br>(City & County of San Francisco Super. Ct. No. CPF-16-515214) |

George M. Rush, who retired in 2012 from City College of San Francisco after 38 years of service, disputes a decision by respondent California State Teachers Retirement System (CalSTRS) calculating his pension. The pension is based on Rush's years of service, retirement age, and "final compensation" as defined by Education Code section 22134.5, subdivision (a) (hereafter section 22134.5(a)). (See Ed. Code,[1] § 24202.5.) The parties dispute the proper method of calculating Rush's final compensation given that, for 12 consecutive months over portions of two school years, Rush served as an associate dean at a salary significantly higher than his salary during the other portions of those years. We conclude that CalSTRS properly construed the versions of the statutes in effect in 2012, and that their application to Rush does not unconstitutionally impair any contractual obligation created by prior versions. We will thus affirm the denial of his writ petition to overturn CalSTRS's determination.

---

[1] Statutory references are to the Education Code unless otherwise noted.

1

## Factual and Procedural History

The material facts are undisputed. Rush began work in 1974 and retired in 2012. Given his years of service and age at retirement, CalSTRS calculated his pension under the Teachers' Retirement Law (§ 22000 et seq.) as 92.58 percent of his final compensation.[2] Rush disputes the determination of his "final compensation."

1. *Statutory context*

As enacted in 2000, section 22134.5(a) defined "final compensation" to mean, for a member with 25 years or more of service, "the highest average annual *compensation earnable* by a member during any period of 12 consecutive months." (Stats. 2000, ch. 1028, § 1, italics added.) Neither party contends that, between its enactment in 2000 and Rush's retirement in 2012, section 22134.5(a) was amended in any way material to this appeal.[3]

Section 22115, defining the term "compensation earnable," was enacted in 1994. (Stats. 1994, ch. 933, § 5.) As originally enacted, it provided that " 'Compensation earnable' by a member means the compensation as determined by the board that would have been earned by the member if he or she were engaged in his or her duties on a full-time basis." (§ 22115, subd. (a).) In 1995, the Legislature added a new subdivision (c) to section 22115 stating that "For purposes of determining final compensation for persons employed on a part-time basis, compensation earnable shall be

---

[2] Section 24202.5 makes a retiring CalSTRS member's pension "equal to the percentage of the final compensation set forth opposite the member's age at retirement in the following table multiplied by each year of credited service." For members who retire at age 63 or older, as Rush did, the table lists a percentage of 2.4. Multiplying 2.4 percent by his 38.575 years of service yields a factor of 92.58 percent to be applied to his "final compensation," as determined pursuant to section 22134.5.

[3] Cf. *post*, footnote 14 [discussing post-2012 amendment].

determined by dividing the compensation earned by the service credit." (Stats. 1995, ch. 390, § 3.) After other, immaterial amendments, the Legislature amended section 22115, subdivision (a), in 1997 by adding the following italicized terms: "'Compensation earnable' means the annual *creditable* compensation that a person would earn *in a school year* if he or she were employed on a full-time basis and if that person worked full time in that position." (Stats. 1997, ch. 482, § 2, italics added.)

In 2000, on the same day that it enacted section 22134.5, the Legislature again amended section 22115.[4] (Stats. 2000, ch. 1021, § 3.) The 2000 amendment to section 22115 retained the phrase "in a school year" in subdivision (a) and modified the section to define "compensation earnable," with an irrelevant exception, as "the creditable compensation a person could earn in a school year for creditable service performed on a full-time basis." (*Ibid.*) The amendment also modified subdivision (c) and added a new subdivision (d). (*Ibid.*) Those subdivisions, as discussed below, provide rules for calculating "compensation earnable" for members who earned creditable compensation at multiple pay rates within a school year. Neither party contends that, between 2000 and Rush's retirement in 2012, section 22115 was amended in any way material to this appeal.

The versions of the two provisions in effect when Rush retired in 2012 thus provided in pertinent part that "final compensation" meant "the highest average annual compensation earnable by a member during any period of

---

[4] The bill amending section 22115 was separate from the bill enacting section 22134.5, but the two bills were enacted on the same day and approved by the Governor and chaptered on the same day. (Compare Assem. Bill No. 821 Fin. Hist. (1999–2000 Reg. Sess.) with Assem. Bill No. 2700 Fin. Hist. (1999–2000 Reg. Sess.).)

12 consecutive months" (§ 22134.5(a)[5]), and "compensation earnable" meant "the creditable compensation a person could earn in a school year for creditable service performed on a full-time basis." (§ 22115, subd. (a).)

2. *Factual background*

From July 2008 through February 2009 Rush served as head football coach at a salary of roughly $120,000. For the next twelve calendar months, from March 2009 through February 2010, a period encompassing the last four months of the 2008–2009 school year and the first eight months of the 2009–2010 school year, Rush served in a position that he describes as "associate dean," in which he earned an annual salary of approximately $160,000 for a portion of the period and $151,000 for the other portion.[6] For the last four months of the 2009–2010 school year he resumed serving as the head football coach at a salary of approximately $120,000.[7]

---

[5] Unless otherwise noted, all citations to provisions of the Teachers' Retirement Law are to the versions in effect when Rush retired in 2012.

[6] Rush describes his salary as an "associate dean" for the entire 12-month period from March 2009 through February 2010 as "approximately $160,000." CalSTRS refers to Rush's job title during this period as "executive assistant to the chancellor" and indicates that for the six months from March 2009 through August 2009 his salary was approximately $160,000, and that for the final six months it was roughly $151,000. The discrepancy regarding his pay rate in the final six months is immaterial to the issues raised in this appeal. For simplicity, we refer to Rush's position as "associate dean."

[7] Based on data in CalSTRS's brief that are not materially disputed, the following are the precise figures, all rounded to the nearest dollar:

4

Shortly after Rush retired, CalSTRS informed him that it had calculated his pension using the entire 2009–2010 school year as the period of 12 consecutive months in which he had the highest average annual compensation earnable. That is the school year in which Rush served the first eight months as associate dean and the last four months as football coach.

To calculate Rush's annual compensation earnable in 2009–2010, CalSTRS applied subdivisions (c) and (d) of section 22115. Subdivision (d) specified a method for calculating compensation earnable "if a member earns creditable compensation at multiple pay rates during a school year." (§ 22115, subd. (d).) It provided that if a member worked at least 90 percent of a school year at the higher pay rate, compensation earnable was to be calculated as if the member earned *all* service credit for the year at the higher rate. (*Ibid.*) But if the member worked less than 90 percent of the year at the higher rate, as Rush did, compensation earnable "shall be determined pursuant to subdivision (c)." (*Ibid.*) That subdivision stated that compensation earnable "shall be the quotient obtained when creditable compensation paid in that year is divided by the service credit for that year."[8] Thus, if a member worked

| School Year | Period | Pay rate | Service credit | Creditable compensation |
|---|---|---|---|---|
| 2008–2009 | July 2008–Feb. 2009 | $120,024 | 0.6228 | $74,752 |
| | Mar. 2009–Jun. 2009 | $160,601 | 0.3772 | $60,578 |
| 2009–2010 | July 2009–Aug. 2009 | $160,601 | 0.1798 | $28,880 |
| | Sep. 2009–Feb. 2010 | $150,965 | 0.4430 | $66,878 |
| | Mar. 2010–Jun. 2010 | $120,024 | 0.3771 | $45,272 |

[8] Subdivision (c) of section 22115 read: "If service credit for a school year is less than 1.000, compensation earnable shall be the quotient obtained when creditable compensation paid in that year is divided by the service credit for that year, except as provided in subdivision (d)." Subdivision (d)

for a full school year at two salaries, accruing a total service credit of 1.0, and if the credit at the higher salary was less than 0.9, as here, compensation earnable for that school year would be the weighted average of the two salaries.

For Rush, the section 22115 calculus yielded compensation earnable for the 2009–2010 school year of $141,569, or $11,797 per month. Taking 92.58 percent of this amount, and adding a $400 per month "longevity bonus," CalSTRS calculated his monthly pension at $11,322.

Rush disagreed, contending that section 22134.5(a)—defining "final compensation" as "the highest average annual compensation earnable by a member during any period of 12 consecutive months"—dictates that his final compensation is the annual compensation of $160,600 that he earned as an associate dean during the 12 consecutive months from March 2009 through February 2010. Using this figure would increase his monthly pension to approximately $12,790. In his view, the definition of "compensation earnable" in section 22115, subdivision (a), referring to the compensation one could earn in a "school year," is irrelevant to the definition of "final compensation" in section 22134.5(a).

Rush requested a hearing pursuant to section 22219, which authorizes the Teachers' Retirement Board (the board) to hold a hearing to determine "any question presented to it involving any right, benefit, or obligation of a

---

read: "If a member earns creditable compensation at multiple pay rates during a school year and service credit at the highest pay rate is at least 0.900 of a year, compensation earnable shall be determined as if all service credit for that year had been earned at the highest pay rate. This subdivision shall be applicable only for purposes of determining final compensation. If a member earns creditable compensation at multiple pay rates during a school year and service credit at the highest pay rate is less than 0.900 of a year, compensation earnable shall be determined pursuant to subdivision (c)."

person under [the Teachers' Retirement Law]."[9] Following a hearing, an administrative law judge issued a proposed decision denying Rush's appeal from the calculation of his pension, and an appeals committee of the board subsequently adopted that decision. Rush filed a petition in the trial court seeking a writ of traditional or administrative mandamus (Code Civ. Proc., §§ 1085, 1094.5) to reverse the board's decision. After briefing and a hearing, the trial court issued an order denying Rush's petition, from which he has filed a timely notice of appeal.

## Discussion

This appeal questions the interpretation of two seemingly inconsistent provisions of the Teachers' Retirement Law, sections 22134.5(a) and 22115, and the constitutionality of applying to Rush the versions of those statutes in effect when he retired.[10] This court reviews de novo the statutory interpretation made by CalSTRS and upheld by the trial court, while deferring to CalSTRS's expertise as the agency charged with administering the Teachers' Retirement Law (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 7–8). We review de novo Rush's

---

[9] Such a hearing is conducted by an administrative law judge subject to the rules governing administrative adjudications (Gov. Code, § 11500 et seq.).

[10] The parties also dispute whether the trial court correctly held that Rush could seek relief only by way of administrative mandamus, which applies to the review of proceedings in which "by law a hearing is required to be given, evidence is required to be taken, and discretion in the determination of facts is vested in the inferior tribunal" (Code Civ. Proc., § 1094.5), rather than traditional mandamus, applicable if the agency is not required by law to hold an evidentiary hearing (Code Civ. Proc., § 1085). We need not decide whether the standards for traditional or administrative mandamus apply because, in either case, CalSTRS's statutory interpretation is correct as a matter of law.

constitutional claim. (*Cal Fire Local 2881 v. California Public Employees'
Retirement System* (2019) 6 Cal.5th 965, 976.)

If CalSTRS properly construed the definition of "final compensation" in
section 22134.5(a) to incorporate the definition of "compensation earnable" in
section 22115, it unquestionably applied subdivisions (c) and (d) of
section 22115 correctly in calculating Rush's pension.[11] Rush argues that
section 22134.5(a) does not incorporate the definition of "compensation
earnable" set forth in section 22115,[12] and that interpreting
section 22134.5(a) to incorporate that definition would deprive him of a
vested right in violation of the Contracts Clause. Both arguments fail.

*1. CalSTRS's Interpretation of the Statutory Scheme is Correct.*

As noted, section 22134.5(a) defined "final compensation" as "the
highest average annual compensation earnable by a member *during any
period of 12 consecutive months*" (italics added); section 22115, in turn, defined
"compensation earnable" as "the creditable compensation a person could earn
*in a school year* for creditable service performed on a full-time basis" (italics
added). Focusing on the italicized terms in section 22134.5(a), Rush contends
that the compensation he received during the 12 consecutive months he

---

[11] Rush made an additional argument below that he has
understandably abandoned on appeal. In the trial court he contended that
under section 22115, subdivision (d) his service credit at the higher pay rate
was "at least 0.900 of a year," because the 12 months he served as associate
dean was a year. But it is clear in context that "at least 0.900 of a year"
means at least 90 percent of the school year in which the member earned
multiple pay rates, as Rush implicitly acknowledges on appeal.

[12] CalSTRS makes a strong showing that Rush forfeited this argument
by failing to develop it in the trial court, where he argued almost exclusively
that applying the 2012 versions of the statutes to him is unconstitutional.
Since Rush's statutory-construction argument raises a pure question of law,
we exercise our discretion to consider it.

8

served as associate dean was his "final compensation." Focusing on the italicized language in section 22115, CalSTRS contends, in effect, that Rush's "highest average annual compensation earnable" in a school year is the average monthly compensation he earned in the school year in which he earned the highest total compensation, which was the 2009–2010 school year.

Considering the language of section 22134.5(a) in isolation, Rush's view is plausible. His petition alleges that if the phrase "any period of 12 consecutive months" in that section necessarily refers to a school year, the reference to "12 consecutive months" is essentially meaningless and the Legislature would have simply used the term "a school year" in that section. CalSTRS acknowledges that "[b]ecause of the manner in which compensation earnable is calculated, a member's highest 12 consecutive months of compensation earnable will often coincide with the school year" (italics added).[13] Rush contends that the use of the phrase "compensation earnable" in section 22134.5(a) does not incorporate the statutory definition of "compensation earnable" in section 22115, but instead identifies those parts of a member's service that count as years of "creditable service" by excluding summer school and overtime.

However, section 22134.5(a) cannot be read in isolation and must be interpreted as part of the statutory scheme in which it appears. The definition of "final compensation" in section 22134.5(a) includes "compensation earnable," and section 22115 defines that term to refer to the compensation

---

[13] At oral argument, CalSTRS's attorney outlined a hypothetical in which the "period of 12 consecutive months" could span parts of two school years for a member who received a raise at the start of a school year and retired in the middle of that year. For such a member, the 12 consecutive months of "highest average annual compensation earnable" could encompass the final six months of the prior school year and the initial six months of the final year.

earned in a school year. Section 22115, moreover, is part of the "Definitions" chapter of the Teachers' Retirement Law (§§ 22100–22177). The Teachers' Retirement Law is a "comprehensive statutory scheme" that must be construed "with an eye toward harmonizing all of its parts." (*O'Connor v. State Teachers' Retirement System* (1996) 43 Cal.App.4th 1610, 1621.) If a provision in the Definitions chapter defines a term, CalSTRS must apply that definition when construing provisions in the Teachers' Retirement Law that use the term. Section 22100 provides explicitly, "Unless the context otherwise requires, the definitions set forth in this chapter govern the construction of [the Teachers' Retirement Law]."[14] Settled rules of statutory construction dictate the same conclusion. (See *Wilcox v. Birtwhistle* (1999) 21 Cal.4th 973, 979 ["words or phrases given a particular meaning in one part of a statute must be given the same meaning in other parts of the statute"]; *Stillwell v. State Bar* (1946) 29 Cal.2d 119, 123 [deeming that principle a "well-established rule of construction"].) The definition of "compensation earnable" in section 22115 thus governs the construction of that term as used in section 22134.5(a).

Any doubt in this regard is dispelled by subdivision (d) of section 22115. That subdivision includes the sentence, "This subdivision shall be applicable only for purposes of determining final compensation."[15] Rush's contention, that the definition of "compensation earnable" in section 22115 does *not* apply

---

[14] Section 22100 was enacted in 1994 (Stats. 1994, ch. 933, § 3) and has never been amended.

[15] As noted, when the Legislature first added subdivision (c) to section 22115 in 1997, it included a similar provision stating, "For purposes of determining final compensation . . . ." (Stats. 1997, ch. 482, § 2.) The 2000 amendment to section 22115 removed that language from subdivision (c) and added it to the newly enacted subdivision (d). (Stats. 2000, ch. 1021, § 3.)

to the determination of final compensation, is thus diametrically at odds with the express provisions of the statute. At a minimum, CalSTRS's interpretation is well within the range of reasonable statutory construction, so that we may appropriately defer to its expertise. (*Yamaha Corp. of America v. State Bd. of Equalization, supra,* 19 Cal.4th at pp. 7–8.)[16]

> 2. *CalSTRS's application to Rush of the provisions in effect when he retired did not unconstitutionally impair an obligation of contract.*

In his argument concerning the proper interpretation of section 22134.5(a), Rush asserts that the superior court "held, mistakenly, that the addition of the two words 'school year' to [section] 22115 (Compensation Earnable) in the year 1997, changed [section] 22134.5 (Final Compensation) which was adopted three years later in the year 2000." In his constitutional argument he contends that CalSTRS's determination impaired his vested contractual right to a pension calculated pursuant to section 22134.5(a) as enacted in 2000. The sequence of enactments, however, belies his contention.

There is no dispute about the applicable constitutional principles. "[A] vested contractual right to pension benefits accrues upon acceptance of

---

[16] Although we do not rely on a statutory amendment enacted subsequent to Rush's retirement, we note that in 2014 CalSTRS proposed a bill "mak[ing] various technical, conforming, or non-controversial changes to the Teachers Retirement Law . . . to facilitate efficient administration of the State Teachers Retirement Plan." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 1220 (2013–2014 Reg. Sess.) as amended Apr. 10, 2014, p. 1.) The changes included an amendment of section 22134.5(a) to provide, as it now does, that " 'Final compensation' means the highest average annual compensation earnable, *as defined in Section 22115*, by a member during any period of 12 consecutive months of service . . . ." (§ 22134.5(a), as amended by Stats. 2014, ch. 755, § 12, italics added.) A committee report stated that this amendment "clarifies [that] calculation rules for final compensation are based on compensation earned in the school year." (Assem. Comm. on Appropriations, Analysis of Sen. Bill No. 1220 (2013–2014 Reg. Sess.) as amended Aug. 4, 2014.)

employment." (*Betts v. Board of Administration* (1978) 21 Cal.3d 859, 863.) "Such a pension right may not be destroyed, once vested, without impairing a contractual obligation of the employing public entity." (*Ibid.*)

By Rush's own account, CalSTRS did not apply to him any provision enacted after the formula for calculating his pension was adopted in section 22134.5(a). As he states, "The statutory definition of 'final compensation' enacted in 2000, . . . § 22134.5(a), is the same language in effect in 2012 when Rush retired." That is the definition CalSTRS applied in calculating his pension. Rush's contention is that CalSTRS misconstrued section 22134.5(a) by incorporating the definition of "compensation earnable" set forth in section 22115. But as he emphasizes, it was in 1997 that the Legislature amended section 22115 to add the phrase "in a school year" to the definition of "compensation earnable." (Stats. 1997, ch. 482, § 2.) What Rush challenges, in sum, is CalSTRS's reliance on statutory text enacted in 1997 when it construed section 22134.5(a), as enacted in 2000. He makes no suggestion that section 22134.5(a) reduced any benefits he was promised prior to its adoption. Since section 22115 contained the phrase "in a school year" when section 22134.5(a) was enacted, there was no subsequent enactment that diminished any rights that Rush had previously held. There is no colorable merit to his constitutional argument.

## Disposition

The order denying the petition for a writ of mandate is affirmed.


POLLAK, P. J.

WE CONCUR:

TUCHER, J.
BROWN, J.

| | |
|---|---|
| Trial court: | San Francisco County Superior Court |
| Trial judge: | Honorable Ethan P. Schulman |
| Counsel for plaintiff and appellant: | CLISHAM & SORTOR<br>David P. Clisham<br>Justine L. Clisham |
| Counsel for defendant and respondent: | PILLSBURY WINTHROP SHAW PITTMAN LLP<br>Marc H. Axelbaum<br>Ryan Selness |

A160588