Filed 1/19/22  Gantman v. Stephan, Schreiber & Tabachnick CPA's CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| ANDREW GANTMAN, | B290271 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BS168144) |
| v. | |
| STEPHAN, SCHREIBER & TABACHNICK CPA'S, INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Edward B. Moreton, Jr., Judge.  Affirmed.

Andrew Gantman, in pro. per., for Plaintiff and Appellant.

DeSimone & Huxster and Gerry DeSimone for Defendant and Respondent.

————————————

Andrew Gantman, representing himself, appeals the judgment entered in favor of his former employer, Stephan, Schreiber & Tabachnick CPA's, Inc. (SST), contending the trial court's findings that SST did not owe him unpaid wages or violate any related provisions of the Labor Code are not supported by substantial evidence. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *Gantman and SST's Business Relationship*

Gantman, a certified public accountant with a solo tax practice, and Peter Stephan, one of the principals of SST, agreed in late 2014 it could be mutually beneficial to combine their operations. As an initial step toward Gantman acquiring an ownership interest in SST, Gantman moved into SST's offices, where, starting January 1, 2015, he provided tax advice to his preexisting clients and performed work for SST clients. Gantman informed his preexisting clients he was merging his practice into SST's. The arrangement continued until late March 2015.

Gantman and SST disputed the nature and extent of their agreement to compensate Gantman for work performed while the parties were contemplating Gantman's purchase of a share in SST. For Gantman's preexisting clients it was agreed Gantman would continue to perform services at previously negotiated rates (typically between $425 and $500 per hour); SST would send invoices to those clients on SST letterhead; and SST would pay Gantman the full amounts billed after the receivables had been collected. Stephan raised the issue of a contribution by Gantman to the firm's overhead in connection with his work for those clients; no express agreement was reached.

For Gantman's work for SST clients Stephan proposed Gantman be paid $100 per hour with an additional $100 per hour

to be credited against a later purchase by Gantman of Stephan's SST stock.  Gantman rejected the proposal since the credit would be worthless if no stock purchase agreement was reached and said he would not work for less than $200 per hour.  According to Gantman, he explained SST could bill its clients for his services at $500 per hour, thereby generating not only reimbursement for overhead attributable to Gantman's work but also a significant profit.  Gantman agreed he would bear any collection risk by deferring payment of his share of revenue until SST actually received payment for sums billed.  Stephan never expressed his agreement with Gantman's counteroffer and complained a number of times about Gantman's demand to be paid $200 per hour, stating he did not need to pay someone that much to do the work Gantman was doing.  Nonetheless, SST paid the sums requested by Gantman until March 2017.

On March 24, 2017 Gantman requested payment of the outstanding sums he believed were owed to him.  The next morning Stephan told Gantman their arrangement was not working out and terminated the relationship.  In the final payment issued to Gantman, SST deducted from the total payment sought by Gantman amounts for overhead (rent and parking) and other employer-related expenses (payroll taxes).[1] Gantman objected to the deductions, but Stephan refused to issue a new check.

---

[1]     The deductions totaled $6,811.

2. *The Labor Commission Proceeding*

Unable to resolve his dispute with SST over what he asserted were unpaid wages and unreimbursed expenses,[2] in April 2015 Gantman, represented by counsel, filed a wage claim with the Labor Commissioner. SST argued Gantman was a partner of the firm, not an employee (relying in part on Gantman's self-description as a partner), and, in any event, because there had been no agreement as to his hourly rate, he was owed nothing more than he had previously been paid. Following a hearing in February 2016 (commonly referred to as a "Berman hearing"), the hearing officer found Gantman was an employee, but awarded nothing because (among other reasons) evidence of reimbursable expenses had not been submitted and there was no independent evidence of an agreement to pay Gantman $200 per hour for his SST client work.

Pursuant to Labor Code section 98.2, subdivision (a), Gantman appealed the adverse award to the superior court, "where the appeal shall be heard de novo." (See *Post v. Palo/Haklar & Associates* (2000) 23 Cal.4th 942, 947-948 ["Although denoted an 'appeal,' unlike a conventional appeal in a civil action, hearing under the Labor Code is de novo. [Citation.] '"A hearing *de novo* [under Labor Code section 98.2] literally means a new hearing," that is, a new trial.' [Citation.] The decision of the commissioner is 'entitled to no weight whatsoever, and the proceedings are truly "a trial anew in the fullest sense"'"].)

---

[2] Neither the record on appeal nor the parties' briefing indicates the total amount demanded by Gantman.

4

### 3. *Trial De Novo in Superior Court*

Gantman's claim for unpaid wages was tried before the court on December 13 and 14, 2017. Both sides were represented by counsel during trial. Gantman, Stephan and three largely peripheral witnesses testified, and 50 documents from the joint exhibit list were admitted into evidence. The parties then submitted posttrial briefs.

After taking the matter under submission, the court on March 21, 2018 issued its ruling in favor of SST. The court found Gantman was an employee of SST; the parties agreed Gantman would be paid for work he performed on behalf of SST's clients, but there was no agreement on the amount Gantman would be paid for that work; there also was no agreement as to what, if anything, Gantman would be paid for activities other than performing accounting work for clients; and there was insufficient proof that any particular activities other than performing accounting work for clients constituted part of Gantman's employment by SST. (The court explained those other activities may have been undertaken in anticipation of Gantman's potential acquisition of an interest in SST or for Gantman's own personal professional development.)

With respect to Gantman's compensation the court found the hourly rate by which Gantman's pay would be calculated "was an ongoing subject of discussion (written and oral)" between Gantman and Stephan. Although Gantman sought to be paid $200 per hour, "defendant . . . never entered into such an agreement." Accordingly, the court concluded, Gantman was entitled to be paid only at the applicable minimum wage at the time ($9 per hour): "Since there was no agreed-upon rate of pay, the $9 minimum wage applied." Putting aside whether SST's

5

clients paid for all time billed by Gantman, Gantman claimed to have performed 639.2 hours of work attributable to SST's clients. According to the evidence at trial, Gantman was paid $25,753.25 for his work for SST's clients, a sum that exceeded by a significant amount the minimum wage for the claimed hours. Thus, "[Gantman] has not proven tha[t] he was paid less than the amount to which he was entitled and he is to take nothing in this lawsuit."

Although no judgment was entered following the court's March 21, 2018 ruling, Gantman, now representing himself, filed a notice of appeal on May 21, 2018. At the direction of this court, the parties obtained a judgment on December 2, 2021. The notice of appeal is deemed filed immediately after entry of judgment. (Cal. Rules of Court, rule 8.104(d)(1).)[3]

---

[3] No court reporter was present during trial. Gantman, who began representing himself after the court's March 2018 ruling, elected to proceed by way of appendix and settled statement. After multiple rounds of proposed settled statement, responses and objections, court order, amendments and additional objections, the court certified the proposed statement on appeal filed by Gantman on April 4, 2019 after counsel for SST indicated it had no further objections. The final version of the statement prepared by Gantman, like the original iteration he had submitted six months earlier, included an extensive summary of his own trial testimony but improperly omitted any summary of the testimony of Stephan. (Cf. Cal. Rules of Court, rule 8.137(d)(2)(A) ["[t]he condensed narrative must include a concise factual summary of the evidence and the testimony of each witness relevant to the points that the appellant states under (1) are being raised on appeal"].)

6

## DISCUSSION

### 1. *Standard of Review*

We generally apply the familiar substantial evidence test when the sufficiency of the evidence is at issue on appeal. Under this deferential standard of review, "'[A]ll factual matters will be viewed most favorably to the prevailing party [citations] and in support of the judgment. . . . "In brief, the appellate court ordinarily looks only at the evidence supporting the successful party, and disregards the contrary showing." [Citation.] All conflicts, therefore, must be resolved in favor of the respondent."' (Italics omitted.) (*Campbell v. Southern Pacific Co.* (1978) 22 Cal.3d 51, 60; accord, *Western States Petroleum Assn. v. Superior Court* (1995) 9 Cal.4th 559, 571; see *Nissan Motor Acceptance Cases* (2021) 63 Cal.App.5th 793, 818 ["We must not review the evidence to determine whether substantial evidence supports the losing party's version of the evidence. Instead, we must determine if there is any substantial evidence, contradicted or uncontradicted, to support the trial court's findings"].)

However, when, as here, the trier of fact has concluded the party with the burden of proof did not carry the burden and that party appeals, "'[I]t is misleading to characterize the failure-of-proof issue as whether substantial evidence supports the judgment. . . . [¶] Thus, where the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. [Citations.] Specifically, the question becomes whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding."'"

7

(*Dreyer's Grand Ice Cream, Inc. v. County of Kern* (2013) 218 Cal.App.4th 828, 838; accord, *Phipps v. Copeland Corp. LLC* (2021) 64 Cal.App.5th 319, 333; *Juen v. Alain Pinel Realtors, Inc.* (2019) 32 Cal.App.5th 972, 978-979; *Patricia A. Murray Dental Corp. v. Dentsply Internat., Inc.* (2018) 19 Cal.App.5th 258, 270; see *In re R.V.* (2015) 61 Cal.4th 181, 201 [where party fails to meet its burden on an issue in the trial court, "the inquiry on appeal is whether the weight and character of the evidence . . . was such that the [trial] court could not reasonably reject it"].)

### 2. *The Evidence Did Not Compel a Finding That SST Agreed To Pay Gantman $200 per Hour*

To prevail on his cause of action for unpaid wages (that is, for breach of contract), Gantman was required to demonstrate SST agreed to pay him $200 per hour for his work on behalf of SST's clients. (See *Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821 [the elements for breach of contract are (1) the existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) resulting damage]; *Stockton Mortgage, Inc. v. Tope* (2014) 233 Cal.App.4th 437, 453; *Rutherford Holdings, LLC v. Plaza Del Rey* (2014) 223 Cal.App.4th 221, 228.) Gantman acknowledges there was no written contract governing his compensation and does not challenge on appeal the trial court's finding there was no oral agreement. Rather, he contends, citing Civil Code section 1584 (section 1584), his offer to provide tax and related advice to SST's clients and demand to be paid $200 per hour followed by SST's payment for his services at that rate (until the final payment made contemporaneously with the termination of his employment) constituted a sufficient offer and

8

acceptance to create a binding agreement.  Gantman's argument is legally and factually flawed.

Section 1584, which states, "Performance of the conditions of a proposal, or the acceptance of the consideration offered with a proposal, is an acceptance of the proposal," describes what is traditionally referred to as a unilateral contract.  (*Asmus v. Pacific Bell* (2000) 23 Cal.4th 1, 10 & fn. 4; see *Cal Fire Local 2881 v. California Public Employees' Retirement System* (2019) 6 Cal.5th 965, 988 ["[a] unilateral contract is one that is accepted by performance"].)  "In a unilateral contract, there is only one promisor, who is under an enforceable legal duty. [Citation.]  The promise is given in consideration of the promisee's act or forbearance."  (*Asmus*, at p. 10.)

In a typical unilateral contract in the employment setting, the employer promises a prospective employee certain compensation for defined work.  The prospective employee accepts the offer (the proposal in the language of section 1584) by performing the work, not by promising to do so.  Once the work is performed (or partially performed), the employer is obligated to make the promised payment; it cannot revoke the offer.  Thus, if SST had proposed to Gantman that it would pay him $200 per hour to provide tax accounting services to its clients and Gantman had performed those services, a unilateral contract would have been created, obligating SST to pay the offered compensation.  If the unilateral contract was of indefinite duration, SST could terminate it only after a reasonable time and after providing adequate notice.  (See *Asmus v. Pacific Bell, supra*, 23 Cal.4th at p. 18.)

Gantman describes a very different type of contract, one that reverses not only the traditional employer/employee roles

9

but also the order of exchange of promise and performance. According to Gantman, he was the promisor who said to SST, "I will perform tax accounting services for your clients if you pay me $200 per hour to do that work." It was undisputed SST did not accept that proposal by promising to make the specified payment, which would have created a bilateral contract. Nor did SST obligate Gantman to honor his promise by performing the conditions of his proposal (paying Gantman in advance of his doing the work), a unilateral contract. As a matter of general contract law, Gantman performed work in the hope of receiving compensation without any binding obligation on the part of SST to pay him the $200 per hour he proposed. Under these circumstances Gantman could at most recover the reasonable value of the services he performed (which, of course, might equal $200 per hour).[4]

---

[4] In the absence of a contract covering compensation—either unilateral or bilateral—SST would be obligated under a theory of quasi-contract or quantum meruit (a common count) to pay Gantman the reasonable value of the services provided. (See, e.g., *Newport Harbor Ventures, LLC v. Morris Cerullo World Evangelism* (2016) 6 Cal.App.5th 1207, 1222 ["'[a] quantum meruit or quasi-contractual recovery rests upon the equitable theory that a contract to pay for services rendered is implied by law for reasons of justice'"]; *Chodos v. Borman* (2014) 227 Cal.App.4th 76, 100 ["'[t]he underlying idea behind quantum meruit is the law's distaste for unjust enrichment'"].) For reasons not explained in the record, Gantman did not seek recovery under a quasi-contract theory as an alternative to his claims for breach of contract/unpaid wages. (Cf. *Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1116-1117 [the trial court hears the appeal from the Berman hearing "'as a court of original jurisdiction, with full power to hear and determine it as

Similarly, the evidence at trial (to the extent reflected in the record on appeal), when considered as a whole, did not compel a finding as a matter of law that, by paying Gantman for a number of weeks at the requested rate of $200 per hour, SST impliedly promised to continue to pay Gantman at that rate. (See Civ. Code, § 1621 ["[a]n implied contract is one the existence and terms of which are manifested by conduct"]; *Retired Employees Assn. of Orange County, Inc. v. County of Orange* (2011) 52 Cal.4th 1171, 1178 [same].) Stephan testified at trial he had repeatedly and consistently told Gantman he was not agreeing to pay him $200 per hour on an ongoing basis. That testimony was supported by joint exhibit 36, Gantman's proposed agenda for a meeting with Stephan dated February 3, 2015 (that is, more than a month after Gantman had moved into SST's offices and started working on SST client matters), which stated as one of the initial matters to be resolved, "Come to terms with underlying view re 'I can get someone at ___/hour' and 'I don't need someone at ___/hour.'" The agenda also called for a discussion of financial matters, specifically "Compensation" and "Overhead," indicating those matters remained unresolved.

It was the trial court's role, not ours, to resolve any conflict in the testimony between Gantman and Stephan regarding the meaning of those agenda items (whether they related to

_____

if it had never been before the labor commissioner'"; "a trial court's power to hear a wage dispute extends to the consideration of related issues not reached by the Labor Commissioner"]; *Klein v. Chevron U.S.A., Inc.* (2012) 202 Cal.App.4th 1342, 1388 ["if a plaintiff was uncertain as to whether the parties had entered into an enforceable agreement, the plaintiff would be entitled to plead inconsistent claims predicated on both the existence and absence of such an agreement"].)

Gantman's initial employment relationship with SST or only his potential purchase of an ownership interest) and, more broadly, concerning the existence and status of any interim agreement about Gantman's compensation. Even under the traditional substantial evidence standard of review, we accept the trial court's interpretation of the evidence. (See *Heard v. Lockheed Missiles & Space Co.* (1996) 44 Cal.App.4th 1735, 1747 [under the substantial evidence standard of review, "[a]ll factual matters must be viewed in favor of the prevailing party and in support of the judgment. All conflicts in the evidence must be resolved in favor of the judgment"]; see also *Pear v. City and County of San Francisco* (2021) 67 Cal.App.5th 61, 76 ["we will not reverse a finding supported by substantial evidence merely because other evidence would have supported a different decision"].) As discussed, our deference to the trial court's resolution of factual disputes is even greater when, as here, the appellant failed to carry the burden of proof at trial and reversal is warranted only if the uncontradicted evidence compels a finding in his or her favor as a matter of law. (E.g., *Phipps v. Copeland Corp. LLC*, *supra*, 64 Cal.App.5th at p. 333.) In addition, because Gantman's settled statement omitted any summary of Stephan's trial testimony, we presume his testimony also supported the trial court's finding there was no agreement, express or implied, to pay Gantman $200 per hour. (See Cal. Rules of Court, rule 8.137(d)(2)(A) ["[a]ny evidence or portion of a proceeding not included [in the proposed settled statement] will be presumed to support the judgment or order appealed from"].)

### 3. *Gantman's Claims of Labor Code Violations Fail in the Absence of an Agreement To Pay Him $200 per Hour*

Gantman contends, by withholdings $6,811 from his final paycheck—sums representing SST's overhead and other employer expenses—SST violated Labor Code sections 201, subdivision (a), 221 and 2802, subdivision (a).  Section 201, subdivision (a), provides, "If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately."  Section 221 provides, "It shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee."  Section 2802, subdivision (a), provides, "An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties . . . ."

The trial court, however, concluded, because Gantman was entitled only to the minimum hourly wage, he had been substantially overpaid, including in his final paycheck.  Accordingly, any deductions from the amount Gantman had requested did not constitute unlawful withholding.  Gantman received full and immediate payment of all wages earned.

Gantman complains it is absurd to believe he would have agreed to work for the minimum wage—a point well taken.  But he does not argue the trial court erred in ruling that, in the absence of an agreement setting his compensation, he was legally entitled only to payment at that rate.[5]  And although he cites case

---

[5]   The trial court did not cite any legal authority for its ruling that, in the absence of an agreement as to his hourly compensation, Gantman was entitled to be paid only at the

13

law that requires an employer to include in a final check all wages earned and unpaid at the time of termination and prohibits withholding amounts to repay debts owed by the employee, whether or not disputed, Gantman does not argue, and the record would not support a claim, that the final payment he received did not fully compensate him for all hours worked at the governing minimum wage. Because SST's final check actually paid Gantman in excess of what he was due for the period covered, the failure to pay him even more, whether or not described as a deduction or withholding, was not unlawful.

Gantman also contends SST, by paying him as an independent contractor, violated Labor Code section 226.8, subdivision (a)(2), which prohibits deducting certain charges, including space rental, from the compensation of an individual who has been willfully misclassified as an independent contractor.[6] But once again, because Gantman was paid all that he claimed he was entitled to prior to the final check and the final check overcompensated Gantman for hours worked when calculated at a $9 hourly rate, there could be no unlawful deductions or withholdings.

---

current minimum wage. As discussed, Gantman does not dispute that ruling on appeal, and SST does not address the point.

[6]  In fact, SST issued Gantman both a form W-2 for a portion of his 2015 earnings ($28,220) and a form 1099 for additional 2015 earnings ($34,603). The numbers suggest the W-2 related to Gantman's work for SST clients; the 1099 reflected his compensation for services provided to his preexisting clients.

14

### 4. *Gantman's Remaining Claims Lack Merit*

Gantman argues the trial court demonstrated clear bias and abused its discretion by ordering him to incorporate into his proposed settled statement amendments and modifications requested by SST, which Gantman contends were false or misleading. However, all the purportedly improper additions were subsequently removed from the iteration of the settled statement certified by the trial court, as Gantman has acknowledged. Accordingly, any interim postjudgment ruling by the trial court concerning the settled statement could not possibly constitute prejudicial error warranting reversal. (See *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 802 [for a trial court's order to be overturned, appellant must demonstrate an error was prejudicial; that except for the error, a different outcome was probable]; *Brue v. Al Shabaab* (2020) 54 Cal.App.5th 578, 588-589 ["[a]bsent any showing of prejudice, we cannot reverse the trial court's order"]; *D.Z. v. Los Angeles Unified School Dist.* (2019) 35 Cal.App.5th 210, 231 ["a '"miscarriage of justice"' warranting reversal '"should be declared only when the court, 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error"'"].)

Finally, Gantman argues he was denied his statutory right to a trial de novo because the trial court ignored the evidence he presented, as well as pertinent legal authority, all of which should have led to a judgment in his favor. Gantman's sequel to his failed substantial evidence argument fares no better than the original version.

## DISPOSITION

The judgment is affirmed.  SST is to recover its costs on appeal.


PERLUSS, P. J.

We concur:


SEGAL, J.


FEUER, J.