Filed 8/23/22  Palma v. Mercury Insurance Company CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JULIO PALMA et al., | B309063 |
| Plaintiffs and Appellants, | Los Angeles County |
| v. | Super. Ct. No. 19STCV04181 |
| MERCURY INSURANCE COMPANY, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Steven J. Kleifield, Judge. Affirmed.

Shernoff Bidart Echeverria, Ricardo Echeverria, Steven Schuetze, Kristin Hobbs and Reid Ehrlich-Quinn for Plaintiffs and Appellants.

Sheppard, Mullin, Richter & Hampton, Peter H. Klee and Marc J. Feldman for Defendant and Respondent.

Plaintiffs Julio Palma and Miriam Cortez[1] (together, Plaintiffs) appeal an order granting summary judgment in a bad faith insurance case against Mercury Insurance Company (Mercury). Mercury insured Frank McKenzie, who killed Plaintiffs' son in a car crash. Plaintiffs obtained a $3 million judgment in a wrongful death action against McKenzie. McKenzie then assigned Plaintiffs his rights against Mercury, and Plaintiffs brought the present action against Mercury on the basis that it failed to accept their reasonable offer to settle their wrongful death claims. The trial court granted Mercury's motion for summary judgment after determining Plaintiffs never offered to settle their claims. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In September 2012, Frank McKenzie was driving a vehicle that struck and killed Oscar Palma, who was riding a moped. At the time, McKenzie was insured under a Mercury insurance policy with bodily injury liability limits of $15,000 and property damage limits of $10,000.

1. *The settlement offer*

On October 15, 2012, attorney Paul Zuckerman sent Mercury a settlement letter on behalf of his law firm, Carpenter, Zuckerman & Rowley, LLP (the Carpenter firm). The letter identifies "Oscar Palma (deceased) Estate of Oscar Palma" as "Our Clients" and states: "Oscar Palma (deceased) Estate of Oscar Palma, demands that Mercury Insurance tender full policy limits to Oscar Palma (deceased) Estate of Oscar Palma

---

[1] Miriam Cortez is a party in her capacity as the successor-in-interest to the Estate of Maria Bonilla. For the sake of simplicity, we sometimes refer to Miriam Cortez in her capacity as successor-in-interest as though she were Maria Bonilla.

2

to resolve their claim. In the event that your full policy limits are not promptly tendered, during the course of litigation, we will determinately prove our client's medical expenses, and recovery will be well in excess of your insured's policy limit."

The letter states the offer was to remain open for 14 days, until October 29, 2012. It further states "this policy limit demand is expressly conditioned on your insured [McKenzie] providing declarations" attesting to several matters, including that he had no other insurance available to cover the loss. It also requires several "conditions precedent" that "must be completely performed by you [Mercury] by October 29, 2012," before the "settlement offer can be accepted." Among other things, it lists as conditions precedent delivery of a draft "made payable to 'Oscar Palma (deceased) Estate of Oscar Palma and their attorneys,' " and delivery of an "appropriate Release of All Claims form." The letter does not specify the terms of the release.

Mercury retained attorney Jeffrey Lim and instructed him to accept the offer. On October 19, 2012, Lim faxed the Carpenter firm a letter stating Mercury "is tendering to the estate and all heirs of Oscar Palma Mr. McKenzie's $15,000 policy limits. [¶] In order to confirm that all heirs are included in the release for the policy limits, please have the heirs complete and sign the attached affidavit of heirs." The Carpenter firm did not respond to the letter.

A few days later, Lim contacted McKenzie to discuss the settlement offer. Lim advised McKenzie that he had "written to Carpenter, Zuckerman & Rowley to request that they identify who Mr. Palma's heirs are. To date, they have not responded to my request. In the October 15, 2012, demand letter they assert that there are no other claims against you, other than

the ones presented by them. If they are being untruthful in their representations, then you may still be subject to a lawsuit by persons with standing whom they do not represent. [¶] . . . I have no reason to believe they are being untruthful regarding there being no other claims, and by making that representation they subject themselves to a lawsuit by any other heirs who might have a right to a portion of the policy limits." McKenzie agreed to accept the settlement offer and signed a declaration stating there is no other insurance covering the loss.

On October 24, 2012, Lim told Mercury that McKenzie agreed to a settlement. Lim said he had "the settlement check and will overnight it to plaintiff's counsel today with the declaration, the policy, and release."

The same day, Lim wrote a letter to the Carpenter firm accepting the "offer to resolve the death claim of Oscar Palma." Lim enclosed a check for $15,000 and represented that, aside from the Mercury policy, there were no other policies in existence for the loss. Lim, however, inadvertently failed to attach McKenzie's declaration to the letter.

Lim included with the letter his office's standard Release of Claims form, which required the release of all "bodily injury and personal injuries and property damage claims, and wrongful death claims . . . ." Lim told the Carpenter firm if "you have any changes to my release, please let me know prior to October 29, 2012." The Carpenter firm did not respond to Lim's letter or request any changes to the release.

In November 2012, Mercury contacted the Carpenter firm to request information related to the value of Palma's moped in order to resolve any property damage claims. Although the Carpenter firm did not respond to Mercury's request, Lim sent

4

the firm a check for $1,070 to cover the complete loss of Palma's moped.

In January 2013, Lim wrote to the Carpenter firm to request the return of the signed Release of Claims form. The Carpenter firm responded that there was no settlement because its October 15, 2012 letter demanded payment of all available policy limits, which included the $10,000 property damage policy limits. Lim informed Mercury of the Carpenter firm's position.

Between March and July 2013, Mercury sent the Carpenter firm six letters "reiterat[ing]" its offer of the $15,000 bodily injury policy limits. The Carpenter firm responded in a July 31, 2013 letter, claiming Mercury "committed bad faith" by failing to accept a reasonable policy limits demand. The Carpenter firm cited Mercury's failure to tender its property damage policy limits, and, for the first time, claimed Mercury failed timely to deliver McKenzie's declaration. The firm said it would be filing a complaint and "[i]t is our expectation that we will obtain a judgment far, far in excess of the insured's policy limits which will cause your insured to be driven into bankruptcy. The insured's credit will be destroyed making it impossible for the insured to obtain credit at any reasonable rate." "The post-judgment collection proceedings will be extremely distressing and embarrassing to the insured as this office will aggressively examine the insured and every member of the insured's family to determine whether the insure[d] has hidden any assets."

Lim responded by sending the Carpenter firm a copy of McKenzie's declaration. He represented that the "declaration had been received, but was inadvertently left out of my October 24, 2012, letter to [the Carpenter firm]. In addition,

I did not read the policy limit demand letter to be inclusive of the property damage policy limits."

Mercury sent the Carpenter firm a separate response stating its position that it "timely offered its $15,000 bodily injury policy limits to your clients to settle their claims against Mr. McKenzie. It is Mercury's position that it was not obligated to tender its property damage policy limits, as your clients' property damage claim did not meet or exceed Mercury's property damage policy limits." Mercury also said it "continues to offer its $15,000 bodily injury policy limits to your clients to settle their claims against Mr. McKenzie."

**2.     *Plaintiffs' wrongful death action against McKenzie***

On August 28, 2013, the Carpenter firm filed a lawsuit against McKenzie on behalf of Plaintiffs, Ana Guzman-Palma, and the "Estate of Oscar F. Palma, a deceased individual." The complaint asserted causes of action for negligence, "survival action," and wrongful death. Following a jury trial, the court entered judgment against McKenzie and in favor of Plaintiffs for $3 million on their wrongful death claims. The court did not enter judgment in favor of the Estate of Oscar F. Palma. Mercury paid Plaintiffs its $15,000 bodily injury policy limits.

**3.     *Plaintiffs' bad faith action against Mercury***

McKenzie assigned his rights against Mercury to Plaintiffs in exchange for a covenant not to execute the judgment against his personal assets. Plaintiffs then filed a complaint against Mercury, alleging it acted in bad faith by failing to accept their reasonable offer to settle within policy limits, which exposed McKenzie to damages far in excess of his available insurance limits. According to the complaint, Mercury failed to accept

6

Plaintiffs' offer because it did not tender the available property damage limits and did not timely deliver McKenzie's declaration.

**4.     *Mercury's motion for summary judgment***

Mercury moved for summary judgment and submitted evidence establishing the facts summarized above. Mercury argued that Plaintiffs could not establish a bad faith claim because only the Estate of Oscar Palma made a settlement offer. Mercury also argued the Carpenter firm's offer was unreasonable because it allegedly demanded payment of the $10,000 property damage limits, yet the value of the property damage was only around $1,070. Alternatively, Mercury argued its failure to accept the settlement offer was the result of negligence, not bad faith.

In opposition, Plaintiffs argued there were triable issues of fact as to whether the Carpenter firm made the settlement offer on their behalf. They also argued Mercury failed to accept the offer because it did not send the Carpenter firm McKenzie's declaration by the October 29, 2012 deadline, and it unreasonably demanded they release their property damage claims in exchange for the bodily injury policy limits. Plaintiffs conceded that the Carpenter firm's offer did not require Mercury to tender its property damage policy limits.

The trial court granted Mercury's motion for summary judgment after determining the Carpenter firm's letter offered only to settle a survival action on behalf of the estate. The court explained that the "client is (awkwardly) referred to as 'Oscar Palma (deceased) Estate of Oscar Palma,' but cannot reasonably be construed to be anyone or anything other than the decedent's estate. [Citation.] The decedent's estate, through a representative, is the plaintiff in a survival action. [Citation.]

7

The only losses described in the demand letter are 'medical expenses,' which could only be recoverable in a survival action, and not in a wrongful death case. [Citation.] Finally, the letter states that there are no 'competing claimants.' [Citation.] No other persons are named as potential claimants. [Citation.] Although Mr. Lim inquired about wrongful death claimants, no response was ever given." The court concluded "[n]o reasonable inference can be drawn that the demand was on behalf of anyone other than an estate pursuing a survival action. The action that resulted in the excess judgment, however, was a wrongful death action. [Citations.] No offer of settlement was made to resolve a wrongful death case. In the absence of an offer, there is no determination of 'reasonableness' to be made."

The court entered judgment for Mercury, and Plaintiffs timely appealed.

## DISCUSSION

Plaintiffs contend the trial court erred in granting Mercury's motion for summary judgment because there are disputed issues of fact concerning whether Mercury unreasonably failed to accept their settlement offer. They argue the Carpenter firm's October 15, 2012 letter constituted an offer to resolve their wrongful death claims, which Mercury unreasonably refused by failing to deliver McKenzie's declaration by the October 29, 2012 deadline. Alternatively, they argue Mercury unreasonably demanded they release any property damage claims in exchange for the bodily injury policy limits.

**1.** *Standard of review*

On appeal from a grant of summary judgment, we examine the facts presented to the trial court and determine their effect as a matter of law, considering all the evidence set forth in the

moving and opposition papers. (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618.) We liberally construe evidence presented in opposition to a summary judgment motion, and we resolve any doubts in favor of the party opposing the motion. (*Ibid*.) A defendant seeking summary judgment must show the plaintiff cannot establish at least one element of the cause of action. (*Ibid*.) Summary judgment is appropriate if no triable issue of material fact exists, and the moving party is entitled to judgment as a matter of law. (*Ibid*.)

## 2. *Bad faith refusal to settle*

"From the covenant of good faith and fair dealing implied by law in all contracts, and from the liability insurer's duty to defend and indemnify covered claims, California courts have derived an implied duty on the part of the insurer to accept reasonable settlement demands on such claims within the policy limits. [Citation.] '[A]n insurer is required to act in good faith in dealing with its insured. Thus, in deciding whether or not to settle a claim, the insurer must take into account the interests of the insured, and when there is a great risk of recovery beyond the policy limits, a good faith consideration of the insured's interests may require the insurer to settle the claim within the policy limits. An unreasonable refusal to settle may subject the insurer to liability for the entire amount of the judgment rendered against the insured, including any portion in excess of the policy limits. [Citation.]' " (*Hamilton v. Maryland Casualty Co.* (2002) 27 Cal.4th 718, 724–725.)

"An insured's claim for bad faith based on an alleged wrongful refusal to settle first requires proof the third party made a reasonable offer to settle the claims against the insured for an amount within the policy limits." (*Graciano v. Mercury*

*General Corp.* (2014) 231 Cal.App.4th 414, 425 (*Graciano*).)
The plaintiff must also prove the insurer failed or refused
" 'to discharge contractual responsibilities, prompted not by
an honest mistake, bad judgment or negligence but rather
by a conscious and deliberate act, which unfairly frustrates
the agreed common purposes and disappoints the reasonable
expectations of the other party thereby depriving that party
of the benefits of the agreement.' " (*Chateau Chamberay
Homeowners Assn. v. Associated Internat. Ins. Co.* (2001)
90 Cal.App.4th 335, 346.) "In evaluating whether an insurer
acted in bad faith, 'the critical issue [is] the reasonableness
of the insurer's conduct under the facts of the particular case.'
[Citation.] To hold an insurer liable for bad faith in failing
to settle a third party claim, the evidence must establish that
the failure to settle was unreasonable." (*Pinto v. Farmers Ins.
Exchange* (2021) 61 Cal.App.5th 676, 687.)

Whether an insurer acted in bad faith "is generally for
the trier of fact to resolve, unless, 'from uncontroverted evidence,
a reasonable man following the law can draw but one conclusion
on the issue.' [Citation.]" (*Hedayati v. Interinsurance Exchange
of the Automobile Club* (2021) 67 Cal.App.5th 833, 843
(*Hedayati*).)

**3. *Plaintiffs did not offer to settle their wrongful death
claims***

The parties agree that we must interpret the Carpenter
firm's October 15, 2012 offer under the general principles
of contract law. (See *T. M. Cobb Co. v. Superior Court* (1984)
36 Cal.3d 273, 279; *Cal Fire Local 2881 v. California Public
Employees' Retirement System* (2019) 6 Cal.5th 965, 988;
*Fassberg Construction Co. v. Housing Authority of City*

10

*of Los Angeles* (2007) 152 Cal.App.4th 720, 765.) " 'The rules governing the role of the court in interpreting a written instrument are well established. The interpretation of a contract is a judicial function. [Citation.] In engaging in this function, the . . . court "give[s] effect to the mutual intention of the parties as it existed" at the time the contract was executed. [Citation.] Ordinarily, the objective intent of the contracting parties is a legal question determined solely by reference to the contract's terms. [Citations.] . . .' [Citation.]" (*Wind Dancer Production Group v. Walt Disney Pictures* (2017) 10 Cal.App.5th 56, 68–69.) "The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." (Civ. Code, § 1638.)

The Carpenter firm's October 15, 2012 letter cannot reasonably be interpreted as an offer to settle Plaintiffs' wrongful death claims. A wrongful death claim is a statutory cause of action that allows a decedent's heirs to recover compensation for the economic loss and deprivation of consortium they personally suffered as a result of the decedent's death. (*San Diego Gas & Electric Co. v. Superior Court* (2007) 146 Cal.App.4th 1545, 1550–1551 (*San Diego Gas*); *People v. Giordano* (2007) 42 Cal.4th 644, 658.) Wrongful death claims belong to the heirs, not the decedent or the decedent's estate. (*Quiroz v. Seventh Ave. Center* (2006) 140 Cal.App.4th 1256, 1263.) The Carpenter firm's letter, however, does not mention Plaintiffs or Palma's heirs, let alone identify them as the offerors. Instead, it identifies the Carpenter firm's client as "Oscar Palma (deceased) Estate of Oscar Palma," "Oscar Palma (deceased)," or "Oscar Palma," none of which had

11

the authority to pursue wrongful death claims.[2] (See Code Civ. Proc., § 377.60 [listing the persons with standing to bring a wrongful death claim].) Rather, Palma's estate could pursue only a survival claim, which is a cause of action that "belonged to the decedent before death but, by statute, survives that event." (*Quiroz,* at p. 1264; see Code Civ. Proc., §§ 377.20, 377.30; *Ruiz v. Podolsky* (2010) 50 Cal.4th 838, 850, fn. 3 [a decedent's estate may bring a survival action].)

Further, although the letter does not explicitly identify the claim it seeks to settle, it warns that the Carpenter firm will "prove our client's medical expenses" through litigation if Mercury does not accept the offer. A decedent's medical expenses are recoverable in a survival action, but not in a wrongful death action. (*San Diego Gas, supra*, 146 Cal.App.4th at p. 1553.) It is clear, therefore, that the Carpenter firm's letter offered to settle the estate's survival claim, and not Plaintiffs' wrongful death claims.

Plaintiffs insist that, although the letter does not explicitly mention them or their claims, it does so implicitly. Plaintiffs point out that the letter refers to "our clients" and "*their* claim," which they contend suggests the Carpenter firm made the offer on behalf of clients other than Palma's estate. We disagree. The letter refers to the Carpenter firm's "client" (singular) six times. In contrast, it mentions the firm's "clients" (plural) only twice,

---

[2] A decedent's personal representative may bring a wrongful death claim on behalf of the heirs. (Code Civ. Proc., § 377.60.) The personal representative, however, does so in his or her capacity as a statutory trustee to recover damages for the benefit of the heirs, not as the personal representative of the estate. (*Adams v. Superior Court* (2011) 196 Cal.App.4th 71, 77–78.)

and it is clear that both are typographical errors. One mention appears in the reference line, which identifies "Oscar Palma (deceased) Estate of Oscar Palma" as the "clients." The other mention appears in the following sentence: "On September 3, 2012, our clients, Oscar Palma (deceased), was brought [*sic*] his moped to a complete stop on Southbound Western Avenue waiting to make a left turn onto eastbound 29th Street." No reasonable person would interpret either reference as suggesting the Carpenter firm made the offer on behalf of other, unnamed clients.

The same is true of the letter's use of the phrase "their claim." The full sentence states: "In light of the foregoing, Oscar Palma (deceased) Estate of Oscar Palma, demands that Mercury Insurance tender full policy limits to Oscar Palma (deceased) Estate of Oscar Palma to resolve their claim." Read in context, "their claim" clearly refers to the claim (singular) belonging to "Oscar Palma (deceased) Estate of Oscar Palma." It does not suggest an intent to settle multiple clients' separate claims.

Plaintiffs urge us to consider extrinsic evidence, which they insist shows the parties understood the Carpenter firm's letter to be an offer to settle wrongful death claims. We decline to do so. "Extrinsic evidence is 'admissible to interpret [a written] instrument, but not to give it a meaning to which it is not reasonably susceptible' [citations], and it is the instrument itself that must be given effect." (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865.) In other words, extrinsic evidence is admissible "to show what the parties meant by what they said, but it is not admitted to show that they meant something other than what they said." (*Rilovich v. Raymond* (1937) 20 Cal.App.2d 630, 639–640.) For the reasons discussed above, the Carpenter

firm's letter is not reasonably susceptible to Plaintiffs' interpretation. Accordingly, we may not consider extrinsic evidence on the issue.

Because Mercury's undisputed evidence shows Plaintiffs did not offer to settle their wrongful death claims, they cannot state a cause of action for bad faith refusal to settle those claims. (*Graciano, supra*, 231 Cal.App.4th at p. 425.) The trial court properly granted Mercury's motion for summary judgment on this basis.[3]

## 4. *Mercury did not act in bad faith*

Even if the Carpenter firm's letter had offered to settle Plaintiffs' claims, Mercury would be entitled to summary judgment because no reasonable trier of fact could conclude it acted in bad faith.

The undisputed evidence shows Mercury directed Lim to accept the Carpenter firm's settlement offer under the terms set out in its October 15, 2012 letter. Lim, in turn, sent the Carpenter firm a letter accepting the offer, tendered the bodily injury policy limits, and complied with all the required conditions

---

[3] For the first time in their reply brief, Plaintiffs argue that even if they did not offer to settle their wrongful death claims, a trier of fact could still determine Mercury acted in bad faith. Mercury moved to strike the argument on the basis that it is untimely. Although we decline to strike the argument, we agree with Mercury that it is untimely and decline to consider it for that reason. (See *Varjabedian v. City of Madera* (1977) 20 Cal.3d 285, 295, fn. 11 ["Obvious reasons of fairness militate against consideration of an issue raised initially in the reply brief of an appellant."]; *Nordstrom Com. Cases* (2010) 186 Cal.App.4th 576, 583 ["[P]oints raised for the first time in a reply brief on appeal will not be considered."].)

by the deadline for acceptance, with the exception of the delivery of McKenzie's declaration.[4]  Although Lim had obtained a signed declaration from McKenzie, he inadvertently failed to include it with the acceptance letter.  The only reasonable conclusion from this evidence is that Mercury would have settled the claims under Plaintiffs' terms, but for Lim's negligence in failing to deliver McKenzie's declaration.  Mere negligence, however, is insufficient to support a claim for bad faith failure to settle. (*Adelman v. Associated Internat. Ins. Co.* (2001) 90 Cal.App.4th 352, 369 ["to recover in tort for an insurer's mishandling of a claim, [a plaintiff] must allege *more* than mere negligence"]; *Merritt v. Reserve Ins. Co.* (1973) 34 Cal.App.3d 858, 880 [bad faith requires more than mere negligence]; *Davy v. Public Nat'l Ins. Co.* (1960) 181 Cal.App.2d 387, 395–396 [bad faith refusal to accept a settlement offer "arises only from a breach of the covenant to exercise good faith and not from a failure to exercise due care"].)

Plaintiffs insist Mercury nevertheless acted in bad faith because it failed to review Lim's acceptance letter to ensure it included McKenzie's declaration.  We disagree.  The undisputed evidence shows that, on October 24, 2012, Lim informed Mercury that he had obtained McKenzie's signed declaration and was going to "overnight" it to the Carpenter firm that day. Mercury did not act unreasonably in relying on its counsel's representations, at least absent some basis to suspect Lim might not deliver the declaration.  Plaintiffs offer no authority to the contrary.  Instead, they contend Mercury acted unreasonably because it failed to comply with its own policy, which required

---

[4]     We assume, for the sake of argument, that the offer required Mercury to deliver the declaration by October 29, 2012.

15

managerial or administrative review of a response to a policy limits demand. The undisputed evidence, however, shows the policy applied only to Mercury's "claims branches," but McKenzie's case was handled by the "litigation unit."

Plaintiffs alternatively argue Mercury acted in bad faith because its Release of Claims form required they give up their property damage claims, even though Mercury only offered its bodily injury policy limits. Mercury, however, submitted a declaration from Lim in which he provided a reasonable explanation for including the property damage language in the release. According to Lim, the Carpenter firm's "demand letter did not specify what release language would be acceptable to the Estate; rather, it merely stated that an 'appropriate Release of All Claims form' was required. There was no way to know what terms the Carpenter firm and its client would deem 'appropriate.' Therefore, my acceptance letter enclosed the standard release form used by my office and in my letter I expressly invited the Carpenter firm to let me know what revisions, if any, they wanted to make to the release so that it was consistent with their intentions. One of the reasons that my acceptance letter was faxed and overnight mailed to the Carpenter firm several days before the settlement deadline was to allow time to work out these and any other details before the deadline expired."

Plaintiffs submitted no evidence contradicting Lim's declaration. Nor is there any evidence showing Mercury refused to remove the property damage language from the release or otherwise required it as a condition of settlement. To the contrary, the undisputed evidence shows Mercury separately attempted to resolve any property damage claims in November

16

2012, before the Carpenter firm informed it that there was no settlement related to the bodily injury policy limits. It is clear, therefore, that Mercury did not intend to require Plaintiffs to release their property damage claims in return for its bodily injury policy limits. Under these circumstances, the fact that Lim sent the Carpenter firm his office's standard release form does not show Mercury acted in bad faith.

Plaintiffs' reliance on *Hedayati, supra*, 67 Cal.App.5th 833 is misplaced. In that case, the insurer did not respond to a settlement offer by the offeror's deadline, never conveyed an intent to accept the offeror's proposed terms, failed to inform the insured of the offer, and did not follow its internal guidelines for handling and responding to the offer. (*Id*. at pp. 848–850.) The insurer subsequently offered to settle for the policy limits, but its outside counsel provided the other party a release with potentially objectionable terms and ignored the party's request for a copy of the insured's policy. (*Id*. at pp. 851–852.) The court concluded the insurer was not entitled to summary judgment because, "[u]nder all of these circumstances, a reasonable trier of fact could conclude [the insurer's] counteroffer to settle the matter through its outside counsel was not reasonably calculated to obtain [the other party's] assent." (*Id*. at pp. 852–853.)

Here, the undisputed evidence shows Mercury made substantial efforts to accept the Carpenter firm's offer. Among other things, it informed McKenzie of the offer, obtained his consent to accept it, tendered its full bodily injury policy limits, made substantial efforts to obtain and deliver the requested information and documents, and expressed a willingness to modify the Release of Claims form. Unlike in *Hedayati*, there

17

is no question that Mercury wanted to settle the claims under Plaintiffs' terms.

Plaintiffs' reliance on *Barickman v. Mercury Casualty Co.* (2016) 2 Cal.App.5th 508 is similarly misplaced. In that case, the insurer tendered its policy limits, but refused to modify its release of claims form, even after the insured agreed to the modification. (*Id.* at pp. 514, 520–521.) Here, there is no evidence showing Mercury refused to modify the Release of Claims form. Instead, the evidence shows Lim invited the Carpenter firm to suggest revisions to his standard form, but the firm never responded.

Plaintiffs also suggest in passing that Mercury did not do all within its power to effectuate a settlement. It is not clear, however, what more Mercury could have done. As discussed above, Mercury tendered its bodily injury policy limits and attempted to accept the Carpenter firm's offer, which it would have done but for its outside counsel's inadvertent failure to deliver McKenzie's declaration. Mercury subsequently offered its bodily injury policy limits seven more times, and there is no evidence showing it insisted on objectionable terms in return.

There is also no doubt that, had Plaintiffs or the Carpenter firm simply told Mercury they had not received McKenzie's declaration with Lim's acceptance letter, Mercury would have provided it by the original deadline. The issue could have been resolved with a single phone call or email in October 2012. The Carpenter firm instead was silent for nearly three months before claiming there was no settlement because Mercury failed to tender its property damage policy limits, a claim Plaintiffs now admit lacks merit. The firm then waited six more months to inform Mercury that it had not received McKenzie's declaration,

18

by which time it was clearly preparing for litigation with an eye toward a future bad faith action. Although Mercury responded by providing the declaration and reiterating its policy limits offer, Plaintiffs pursued a legal action against McKenzie, knowing it would "destroy[ ]" his credit and subject him and his family to "extremely distressing and embarrassing" post-judgment collection proceedings. If anyone acted in bad faith, it was Plaintiffs and the Carpenter firm.

## DISPOSITION

The judgment is affirmed. Mercury Insurance Company is awarded its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EGERTON, J.

We concur:

EDMON, P. J.

LAVIN, J.

19